IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHARON M. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | CIV-13-1159-D |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | |
|   Acting Commissioner of Social ) | |
|   Security Administration, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Administrative Proceedings

Plaintiff protectively applied for disability benefits on April 6, 2011, alleging that she became disabled on March 27, 2007. Plaintiff, who was 28 years old at the time of her alleged onset date, had completed one year of college, and had past work experience as a

1

cashier and fast food worker, although her earnings were meager. (TR 150). Plaintiff alleged she was unable to work due to bulging discs in her lower back and a "tear" in a patellar ligament. (TR 156).

At Plaintiff's request, a hearing was conducted on June 19, 2012, before Administrative Law Judge Gordon ("ALJ") at which Plaintiff, appearing with her attorney, testified. (TR 28-55). A vocational expert ("VE") also testified. (TR 28-55).

The ALJ issued a decision (TR 16-23) on September 21, 2012, in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. Following the agency's well-established sequential evaluation procedure, the ALJ found at step one that Plaintiff met the agency's insured status requirements through September 30, 2012, and that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 27, 2007. At step two, the ALJ found that Plaintiff had severe impairments due to degenerative disc disease of the lumbar spine, status post surgery; degenerative joint disease of the right knee, status post surgery; obesity; and hypertension. In connection with the step two finding, the ALJ considered the evidence with respect to Plaintiff's alleged mental impairment due to depression. For reasons stated in the decision, the ALJ concluded that Plaintiff's depression had resulted in no more than mild functional limitations and was therefore not a severe impairment.

At step three, the ALJ found that Plaintiff's impairments did not medically meet or equal the requirements of a listed impairment. At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level

involving lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking 6 hours in an 8 hour workday, sitting 6 hours in an 8 hour workday, and requiring no more than occasional crouching or kneeling. The ALJ found that Plaintiff had no past relevant work.

The ALJ also considered the credibility of Plaintiff's allegation of disabling pain and limitations. The ALJ found that Plaintiff's testimony and statements were only partially credible in light of the objective medical evidence, the RFC assessments by the agency's medical consultants, Plaintiff's statements concerning her usual daily activities, and "her work activity after the alleged onset date." (TR 21).

At the fifth and final step of the sequential analysis, the ALJ found that Plaintiff was capable of performing work available in the economy. Relying on the VE's testimony, the ALJ noted that the light, unskilled jobs of sales attendant, storage facility rental clerk, and cafeteria floor worker fell within the assessed RFC for work, and therefore Plaintiff was not entitled to benefits. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the Commissioner's final decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003).

3

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Plaintiff's Claims

Plaintiff contends that the ALJ's RFC assessment was faulty because the ALJ did not properly evaluate her severe impairment due to obesity and because the ALJ erred in discounting her credibility. The Commissioner responds that the ALJ's decision reflects adequate consideration of Plaintiff's severe impairments and credibility and asserts that the Commissioner's decision should be affirmed.

IV. RFC Assessment and Evaluation of the Evidence Concerning Obesity and Depression

Plaintiff contends that the ALJ's assessment of her RFC was faulty because the ALJ did not expressly consider the effects of her obesity. Social Security Ruling ("SSR") 02-1p requires an ALJ to consider the effects of obesity when assessing a claimant's RFC and advises that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p, 2000 WL 628049, *1 (Sept. 12, 2002). An ALJ may "not make assumptions about the severity of functional effects of obesity combined with other impairments," but must "evaluate each case based on

the information in the case record." Id. at * 6.

Plaintiff asserts only that her obesity should have been considered in greater detail "in light of" her back and right knee impairments. However, Plaintiff points to no evidence in the record suggesting that her obesity caused greater functional limitations than those set forth in the ALJ's RFC assessment. Nor does Plaintiff point to any opinion by a treating or examining physician that placed any permanent restrictions upon Plaintiff's ability to work. The ALJ's decision includes a discussion of the relevant medical evidence with respect to Plaintiff's back and knee impairments. Plaintiff testified at the hearing that she had been released by her neurosurgeon following her spinal fusion operation performed in November 2011. As the ALJ noted in the decision, Plaintiff reported her pain improved following this operation. Indeed, Dr. Pagnanelli, her treating surgeon, noted in January 2012 that she was "doing . . . well" and she was advised to gradually increase her activities. (TR 367). In January 2012, she reported to Dr. Eiser, another treating doctor, that she was "doing well" after her lumbar surgery. (TR 345). By May 2012, Plaintiff reported that she was taking pain medication for her back pain only occasionally. (TR 327).

Further, as the ALJ pointed out, Dr. Eiser noted in May 2012 that Plaintiff's right knee showed good range of motion and good motor and sensory function. In fact, other than mild swelling, no abnormal findings were noted by Dr. Eiser or Dr. Waters, Plaintiff's primary care physician, on examination of Plaintiff's right knee in February 2011, October 2011, January 2012, February 2012, March 2012, and May 2012. As the ALJ also pointed out, the agency's medical consultants reviewed the medical evidence and determined that Plaintiff

5

was capable of performing light work.

In Plaintiff's opening brief, Plaintiff argues that the ALJ erred in assessing her RFC because the ALJ did not provide a "meaningful analysis concerning the impact of her affective disorder." Plaintiff's Opening Brief, at 8. But the ALJ's decision includes a discussion of the evidence related to Plaintiff's depression, including reference to the report of the consultative psychological examiner, Dr. Danaher, and specific findings as to the severity of functional limitations stemming from her depression based on her subjective testimony and statements in the record and Dr. Danaher's report. Plaintiff does not point to evidence in the record that was probative of the issue and was not discussed in the ALJ's decision. It is not this Court's function to reweigh the evidence or substitute its judgment for the judgment of the Commissioner. Lax, 489 F.3d at 1084.

The ALJ's decision reflects adequate consideration of the evidence in the record with respect to Plaintiff's severe and nonsevere impairments, including obesity and depression, and no error occurred in the ALJ's evaluation of the evidence.

V. Credibility - Pain

Plaintiff next faults the ALJ for not considering her "subjective complaints," for not making "specific findings," and for not including a "more detailed analysis" with respect to the credibility of her allegation of disabling pain related to her back and knee impairments and migraine headaches. Plaintiff admits that the ALJ expressly considered her daily activities in determining that her allegation of disabling pain was not credible. Plaintiff alleges, however, that the ALJ did not consider her statements that she had to have assistance

6

from her husband and daughter in performing many of these activities. Plaintiff further contends that the ALJ erred in relying only on her daily activities to support the credibility determination.

The Commissioner responds that the ALJ did consider her subjective statements in the record and considered her daily activities and the objective medical evidence, which the ALJ found was not consistent with her subjective statements, in making the credibility determination. The Commissioner asserts that there is substantial evidence to support the credibility determination, including the evidence showing her pain improved after her lumbar fusion surgery, that x-rays of her knee showed good alignment and no significant bony abnormality, and that she exhibited good range of motion and good motor and sensory function in her knee on examination, and the fact that she worked for seven or eight months after she alleged she became disabled.

The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about [her] symptom(s) and [their] functional effects." SSR 96-7p, 1996 WL 374186, at * 1 (1996). "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). But an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements" in determining a claimant's credibility. SSR 96-7p, 1996 WL 374186, at * 4 (1996). Credibility findings must also "be closely and affirmatively linked to substantial

7

evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted).

In addition to objective evidence, the ALJ should consider certain factors in evaluating a claimant's credibility, including the claimant's daily activities; the location, duration, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; any treatment other than medications the individual receives or has received for pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 WL 374186, at * 3. See Hamlin v. Barnhart, 365 F.3d 1208, 1220 (10th Cir. 2004)(stating ALJs "should consider" factors set forth in SSR 96-7p).

An ALJ is not, however, required to conduct a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Employing "common sense" as a guide, the ALJ's decision is sufficient if it "sets forth the specific evidence he [or she] relies on in evaluating the claimant's credibility." Id.; Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012).

"A claimant's subjective allegation of pain is not sufficient in itself to establish disability." Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). Instead, "[b]efore the ALJ need even consider any subjective evidence of pain, the claimant must first prove

8

by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." Id. The relevant procedure requires the ALJ to consider and determine (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is at least a "loose nexus" between that impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all of the evidence, both objective and subjective, the claimant's pain was in fact disabling. Luna v. Bowen, 834 F.2d 161, 163-164 (10th Cir. 1987).

To find that a claimant's pain is disabling, the "pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Brown v. Bowen, 801 F.2d 361, 362-363 (10th Cir. 1986)(internal quotation omitted). "Subjective complaints of pain must be evaluated in light of plaintiff's credibility and the medical evidence." Ellison v. Secretary of Health & Human Servs., 929 F.2d 534, 537 (10th Cir. 1990).

In this case, the ALJ found that Plaintiff had pain-producing back and knee impairments. The ALJ first considered Plaintiff's testimony at the hearing concerning her pain and her estimations of her ability to lift, stand, and walk. (TR 20). The ALJ stated that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with

9

the above [RFC] assessment." (TR 21).

As Plaintiff suggests, these statements are "boilerplate," and ALJs are discouraged from relying on such boilerplate language in determining credibility. See Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). However, the use of such boilerplate is "problematic only when it appears 'in the absence of a more thorough analysis.'" Keyes-Zachary v. Astrue, 695 F.3d 1156, 1170 (10th Cir. 2012)(quoting Hardman, 362 F.3d at 679).

Here, the ALJ went beyond the boilerplate language and considered the objective medical evidence, including MRI testing and physical examination findings, Plaintiff's subjective statements concerning her daily activities, and her work activity after she alleged she was disabled. Plaintiff complains that the ALJ did not consider Plaintiff's statement in the record that she "frequently" needed to have her husband assist her with personal needs. Plaintiff's Opening Brief, at 14. However, Plaintiff stated only that she "sometimes" needed help with bathing and shaving. (TR 177). Plaintiff stated that she engaged in a wide range of activities, including caring for her daughter, attending her daughter's activities, babysitting family members, cooking, shopping, performing some household chores, fishing, attending family cookouts, mowing, and visiting with others. This functional report was completed in May 2011, prior to Plaintiff's lumbar surgery, and, as the ALJ noted, Plaintiff reported her back pain improved following the surgery. Her treating surgeon described the surgery as "minimally invasive." (TR 375).

Plaintiff was prescribed anti-inflammatory medication for her right knee pain, and she reported that the medication was effective in reducing her pain. Plaintiff reported to her

treating physician, Dr. Eiser, in January 2012 that her right knee bothered her only with "increased activities such as going up and down stairs." (TR 345). Although Dr. Eiser noted she exhibited a small amount of effusion, he found her knee exhibited no instability, good range of motion, and good motor and sensory function. (TR 346). The ALJ properly considered this objective medical evidence, and the lack of significant findings of right knee abnormalities on x-ray and MRI testing, as being inconsistent with Plaintiff's allegations of disabling pain and limitations. Dr. Eiser made similar examination findings in March 2012 and May 2012 and noted in May 2012 that Plaintiff reported she was taking medication for back pain only occasionally. (TR 319, 334). None of Plaintiff's treating physicians placed permanent restrictions on her ability to work.

Finally, as the ALJ reasoned, the agency's medical consultants found, based on a review of the medical evidence, that Plaintiff was capable of performing light work. Giving Plaintiff the benefit of the doubt, the ALJ imposed additional postural limitations in the RFC assessment in light of Plaintiff's testimony that her right knee limited such postural movements.

The ALJ did not err in considering the evidence with respect to Plaintiff's allegation of disabling pain. There is substantial evidence in the record to support the ALJ's credibility determination. The VE's testimony that jobs are available in the economy for an individual with Plaintiff's RFC for work provided substantial evidence to support the Commissioner's step five decision, and that decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before      November 3rd, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this      14th      day of      October     , 2014.

*[signature]*

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE